UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARRELL B. CABARRIS,

                             Plaintiff,

              v.                                        DECISION & ORDER

KNIGHT TRANSPORTATION, INC.                             17-CV-6259-MJP
and ETHAN B. DASHER,

                             Defendants.

---

## INTRODUCTION

**Pedersen, M.J.** Plaintiff Darrell B. Cabarris ("Plaintiff") commenced this action in Supreme Court, New York State, on March 7, 2016, against defendants Knight Transportation, Inc. and Ethan B. Dasher ("Dasher") (collectively, "Defendants"), alleging that he suffered a "serious injury" under New York State Insurance Law section 5102(d) and that he sustained economic loss, as defined in section 5102(a) of the New York State Insurance Law. (Compl., ECF No. 1-2.) The case was removed to the Western District of New York on April 26, 2017, on the basis of diversity.[1] (Notice of Removal, Apr. 26, 2017, ECF No. 1-1.) The parties have consented to the disposition of this case by a United States magistrate judge. (Notice,

---

[1] Plaintiff is a resident of New York State, Defendant Knight Transportation, Inc. is incorporated and has a principal place of business in Arizona, and Dasher is a resident of North Carolina. The accident occurred in New York. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. New York law governs. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (federal courts sitting in diversity apply choice of law rules of the forum state); *Padula v. Lilam Properties Corp.*, 84 N.Y.2d 519, 521 (N.Y. 1994) (in tort cases, such as the instant case applies the law of the forum with the most at stake).

Consent and Reference of a Civil Action to a Magistrate Judge, Jun. 12, 2017, ECF No. 5.) The Court determines that Plaintiff has raised a material issue of fact that precludes summary judgment.

## BACKGROUND

On January 19, 2016, Plaintiff was involved in a car accident with Dasher, who at the time was employed by defendant Knight Transportation, Inc. (Compl. ¶ 16.) On April 26, 2017, Plaintiff sued Defendants, alleging that Dasher negligently collided with Plaintiff's vehicle, causing Plaintiff serious injuries. (Compl. at 5–6.) In addition, Plaintiff has asserted a claim for economic losses. (Pl.'s Interrog. Resp. at 10, ECF No. 58-5.) On June 19, 2019, Defendants filed a motion for summary judgment arguing that Plaintiff did not sustain a "serious injury" under New York State Insurance Law sections 5102(d) and 5104 ("No Fault law") as a result of the accident and that Plaintiff failed to demonstrate economic losses. (Pl.'s Notice of Mot. for Summ. J. at 1, ECF No. 58;  Defs.' Reply Mem. of Law at 5 & 13–15, ECF No. 65; Defs.' Sur-Reply Mem. of Law at 4–9, ECF No. 68.)

## APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S.

372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)).

The New York "No-Fault" law provides that in a personal injury or negligence action between "covered person[s]," "there shall be no right of recovery for non-economic loss, [*e.g.*, pain and suffering,] except in the case of a serious injury, or for basic economic loss." N.Y. Ins. Law sections 5104(a), 5102(c). The No-Fault statute defines "serious injury" as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

When moving for summary judgment in a case involving the "No-Fault" law, the defendant has the initial burden "to make an evidentiary showing that the plaintiff has not sustained a serious injury as a matter of law." *Lawyer v. Albany,* 142 A.D.2d 871, 872 (3d Dep't 1988) (citation and internal brackets omitted); *see also Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) ("A defendant must establish a *prima facie* case that plaintiff did not sustain a 'serious injury' within the meaning of Insurance Law § 5102(d)."); *Conley v. United States,* No. 08-CV-820A, 2010 WL 6370542, at *4 (W.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by,* No. 08–CV–820, 2011 WL 1156707 (W.D.N.Y. Mar. 28, 2011) ("Under this law, defendant

has the initial burden of establishing a prima facie case that plaintiff has not sustained any 'serious injury' under Insurance Law § 5104."). "The defendant may satisfy this initial burden with unsworn reports by the plaintiff's physicians or with sworn affidavits or affirmations by the defendant's own retained physicians[.]" *Evans v. United States*, 978 F. Supp. 2d 148, 162–63 (E.D.N.Y. 2013) (citations omitted).

Once the defendant has met his burden, the burden shifts to the plaintiff to "overcome [the defendant's] motion by demonstrating that [he] sustained a serious injury." *Gaddy v. Eyler,* 79 N.Y.2d 955, 957 (1992). In this regard, "a plaintiff must offer objective proof of an injury." *Rivera v. United States,* 10-CV-5767 (MHD), 2012 WL 3132667, at *10 (S.D.N.Y. Jul. 31, 2012). This evidence may be in the form of sworn affidavits, reports by physicians, deposition testimony, or medical test records, including MRI and X-ray results. *Yonq Qin Luo,* 625 F.3d at 777 (finding that the plaintiff raised an issue of fact as to whether she sustained a "serious injury" by submitting deposition testimony and medical records from her treating doctors*); Feggins v. Fagard*, 52 A.D.3d 1221, 1223 (N.Y. App. Div. 4th Dep't 2008) (Court can consider unsworn reports and uncertified medical records submitted by a plaintiff in opposition to a motion for summary judgment if those records were submitted by defendant or were referenced in the reports of physicians who examined plaintiff on their behalf, and submitted the reports of their experts.); *Brown v. Achy,* 9 A.D.3d 30, 32 (N.Y. App. Div. 1st Dep't 2004) (finding that plaintiff raised a triable issue of fact regarding whether she sustained a serious injury where she submitted an MRI report, results of an electromyogram and nerve conduction velocity study, and records

from her neurologist). "As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" *Rivera*, 2012 WL 3132667, at *10 (quoting *Nasrallah v. Helio De*, No. 96-CV-8727(SS), 1998 WL 152568, at *8 (S.D.N.Y. Apr. 2, 1998)).

Additionally, "[a]s with the question of whether a 'serious injury' occurred, Defendant bears the initial burden of making a prima facie case based on medical evidence that the injuries complained of are not causally linked to the accident in question." *Zhang v. Alvarado*, No. 15-CV-4373 (NGG) (JO), 2017 WL 6375732, at *9 (E.D.N.Y. Dec. 8, 2017). "If the Defendant meets this burden, the burden shifts to the Plaintiff to come forward with evidence addressing the defendant's claimed lack of causation." *Evans v. United States*, 978 F. Supp. 2d 148, 164 (E.D.N.Y. 2013) (citations and internal quotation marks omitted).

## ANALYSIS

### Plaintiff's Claimed Injuries

Plaintiff claims that his injuries fall under the following four of the New York "No Fault" law "serious injury" categories:

(1) "permanent consequential limitation of use of a body organ or member;"

(2) "significant limitation of use of body function or system;"

(3) "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less

than ninety days during the one hundred and eighty days immediately following the occurrence of the injury or impairment" (the "90/180" category); and

(4) "significant disfigurement."

(Pl.'s Interrog. Resp. at 8.) Specifically, Plaintiff alleges that he sustained the following injuries as a result of the subject accident:

a. Neck: cervicalgia; cervical radiculopathy, aggravation of cervical herniated nucleus pulposus, activation/aggravation of degenerative changes of the cervical spine;

b. Back: lumbago; sacrolitis [sic]; annular bulge at L4-5; annular bulge at L3-4 requiring transforaminal lumbar interbody decompression and fusion (TLIF) at L3-4); annular bulge at L2-3; activation/aggravation of degenerative changes of the lumbar spine;

c. Right Shoulder: tendinopathy; tendinopathy of the rotator cuff; activation/aggravation of right acromioclavicular joint arthropathy;

d. Left Shoulder: activation/aggravation of degenerative changes;

e. Chest contusion; and

f. Abdominal contusion.

(*Id.* at 7–8.)

Plaintiff also claims that he suffered a serious injury in the form of a significant disfigurement as a consequence of the lumbar surgery performed after the 2016 collision. (*Id.* at 8.) Finally, Plaintiff asserts that he has suffered economic losses. (*Id.* at 10; Pl.'s Mem. of Law at 5, ECF No. 62.)

*Admissibility*

 Prior to addressing the motion for summary judgment, the Court considers Defendants' challenges to the admissibility of numerous documents relied upon by Plaintiff in opposition to Defendants' motion. (Defs.' Mem. of Law at 9, ECF No. 65.) In particular, Defendants argue that the medical records from the following health care providers are inadmissible because they are unaffirmed:

- Buffalo Ergonomics OT Services, PLLC;

- Rochester Chiropractic;

- Upstate University Hospital;

- Dr. Elfar/University of Rochester.

(*Id.*) In addition, Defendants assert that the copy of defense expert Dr. Leone's deposition transcript submitted by Plaintiff is uncertified and, therefore, inadmissible.[2] (*Id.*) Finally, Defendant asserts that the police report relating to the accident that is the subject of this lawsuit and submitted by Plaintiff is inadmissible as it is purportedly unsworn. (*Id.*)

 It is well established that "[m]aterials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial." *Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 169–70 (2d Cir. 2014) (quotations omitted); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) ("We do not mean that the

---

 [2] In its Response to Defendants' Objections to the Admissibility of Evidence submitted by Plaintiff in opposition to Defendants' motion for summary judgment (ECF No. 72), Plaintiff submitted a certified copy of Dr. Leone's deposition transcript, rendering this issue moot.

nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (so long as the evidence in question "will be presented in admissible form at trial," it may be considered on summary judgment.).

Moreover, refusing to consider Plaintiff's exhibits now would strip summary judgment of "[o]ne of [its] principal purposes . . . to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. 317 at 323–324. In *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 47 (2d Cir. 2015), Second Circuit Judge Christopher F. Droney reiterated the Circuit's "strong preference for resolution of disputes on their merits." (citations omitted). While in the *Rodriguez* case, the Court noted that the plaintiffs were not given the opportunity to respond to defendants' challenges to the admissibility of certain evidence, including medical records, and here Plaintiff was provided that opportunity, this Court follows the Second Circuit's maxim that "[b]ecause of the preference to have issues and claims decided on their merits, rather than on the basis of a procedural shortcoming, the exclusion of otherwise relevant evidence on technical grounds is generally not favored." *Id.* (citations omitted). It is for these reasons that the Court will consider medical records from the four above-listed medical providers when deciding this motion.[3] Having determined that it can consider Plaintiff's evidence on this motion, the Court will now discuss the merits of the motion.

---

[3] The Court did not consider the police report when reaching its decision on this motion and, therefore, it need not rule on its admissibility.

***"Serious Injury" under the No-Fault Law: Significant/Permanent
Consequential Limitation of Use***

The first two categories of serious injury alleged by Plaintiff, permanent

consequential and significant limitation of use, "are often analyzed together."

*Sanchez v. Travelers Cos., Inc.*, 658 F. Supp. 2d 499, 510 (W.D.N.Y. 2009).

> In deciding whether a plaintiff has suffered a permanent consequential
> limitation or significant limitation of use of a body function or system, a
> court must determine the medical significance of plaintiff's injury and
> compare the degree or qualitative nature of an injury based on the
> normal function, purpose and use of the body part.

> A plaintiff sustains a permanent consequential limitation of use when
> his or her injury is both permanent and results in a significant or
> consequential physical limitation....

> A significant limitation of a body function or system must be significant,
> meaning more than minor, in both degree and duration.

*Buccilli v. United States,* No. 14-CV-166A (SR), 2016 WL 4940260, at *7 (W.D.N.Y.

Feb. 3, 2016) (internal citations and quotations omitted). "[S]ignificant limitation of

use of a body function does not require *permanence*, but instead requires a fact finding

on the issue of whether the dysfunction is important enough to reach the level of

significance." *Miller v. Miller*, 100 A.D.2d 577, 578 (N.Y. App. Div. 2nd Dep't 1984)

(emphasis in original). "The limitation of use need not [ ] be total." *Savage v. Delacruz*,

100 A.D.2d 707, 707 (N.Y. App. Div. 3d Dep't 1984). Further, "permanency of an

injury could refer to persistent pain, or operation of the organ, member or system in

some limited way, or only with pain." *Ottavio v. Moore*, 141 A.D.2d 806, 807 (N.Y.

App. Div. 2d Dep't 1988), *appeal denied* 73 N.Y.2d 704 (1989).

"In order to prove the extent or degree of physical limitation, an expert's

designation of a numeric percentage of a plaintiff's loss of range of motion can be used

to substantiate a claim of serious injury." *Toure v. Avis Rent A Car Sys.,* 98 N.Y.2d 345, 350 (2002). Such findings of limited range of motion may nonetheless fail to establish a serious injury where medical experts provide no details as to the findings or how they were ascertained. *Mikl v. Shufelt*, 285 A.D.2d 949, 950 (N.Y. App. Div. 3d Dep't 2001).

Plaintiff claims that he suffered significant limitations of use of body function or system with respect to his cervical and lumbar spine and his right shoulder. (Pl.'s Mem. of Law at 15–16.) He asserts that he sustained permanent consequential limitations with respect to his cervical/neck and lumbar spine injuries. (*Id.* at 17.) Plaintiff specifically indicates that he is not claiming any permanent consequential limitation related to his abdominal or shoulder injuries. (*Id.*)

Defendants contend that Plaintiff did not sustain any "serious injury" as a result of the January 19, 2016, collision. (Defs.' Mem. of Law at 7.) They argue that Plaintiff's medical records prior to the accident demonstrate that he suffered from pre-existing neck and back injuries. (*Id.* at 12.) Defendants further assert that "given [Plaintiff's] significant history of prior neck and back injuries, symptoms, and treatments," Plaintiff's claimed injuries are not causally related to the subject accident. (*Id.* at 13.)

In support of their argument that Plaintiff's injuries do not meet the statutory threshold for a "serious injury," Defendants submit the affirmed report of Anthony Leone, M.D., a board-certified orthopedic surgeon. (Leone Report (Sept. 16, 2018) & Addendum (Jan. 1, 2019), Jun. 19, 2020, ECF No. 58-10.) Dr. Leone examined

Plaintiff on May 8, 2018. (*Id.* at 1.) He submitted a report after conducting his evaluation of Plaintiff and after reviewing Plaintiff's medical file. He determined that Plaintiff had "(1) [a] right shoulder sprain strain, (2) cervical sprain strain with disc changes in the cervical spine, [and] (3) lumbar disc disease status post prior fusion at L4-5 and L5-S1 before the injury and an additional fusion at L3-4 after the injury." (*Id.* at 1–2, 58.)

### *Lumbar Spine*

With respect to Plaintiff's lumbar spine, Defendants assert that a review of the totality of evidence, and in particular the objective evidence amassed, does not demonstrate that Plaintiff suffered a permanent consequential limitation or a significant limitation resulting from the 2016 accident. (Defs.' Mem. of Law at 26.)

Dr. Leone diagnosed Plaintiff with "Lumbar Disc Disease status post prior fusion at L4-5 and L5-S1 before the injury and an additional fusion at L3–4 after the injury." (Leone Report at 58.) Dr. Leone opined that Plaintiff has a long history of low back problems, dating back to X-rays taken in 2009, which showed abnormalities at the L4-5 and L5-S1 regions of his back. (*Id.*) Dr. Leone stated that Plaintiff's current back complaints are about the same areas in which he was having trouble in 2012. (*Id.* at 59.) He remarked that these were the same regions that were the subject of Plaintiff's 2012 spinal fusion, which occurred after Plaintiff was involved in a motor vehicle accident that same year. (*Id.*) He stated that Plaintiff underwent a CT scan in 2016, which demonstrated that the fusion at L4-5 and L5-S1 failed "because of claimant's ongoing smoking." (*Id.* at 60.) Dr. Leone noted that Plaintiff continued to

suffer back pain after the 2012 surgery into 2015, and was taking prescription pain medication to address that pain prior to the 2016 collision. (*Id.*)

Based upon this evidence, the Court determines that Defendants have established a *prima facie* case that Plaintiff did not suffer a serious back injury with respect to his lumbar spine as a result of the January 19, 2016, crash.

However, Plaintiff has raised a triable issue of fact by relying on objective medical evidence, including the medical records of Zair Fishkin, M.D., Ph.D., an orthopedic surgeon who performed Plaintiff's 2012 back surgery as well as his back surgery after the 2016 collision. (Voltz Aff. at 6, ECF No. 63.) Plaintiff has provided objective medical evidence which suggests that while there was imaging evidence showing degenerative changes in the L3-4 region of his spine taken prior to the crash, an MRI taken after the 2016 collision showed there was also disc herniation in that same area and that a CT scan performed on Plaintiff demonstrated "a full thickness annular tear/radial disruption" in the L3-L4 region. (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Aug. 31, 2016) at 48, ECF No. 63-2.)

More specifically, in reviewing Plaintiff's August 14, 2016, lumbar MRI, Dr. Fishkin noted that the "MRI demonstrates evidence of disc herniation at L3-4 superimposed on degenerative changes and a Schmorl's node in the endplate of the L3 vertebral body." (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Jun. 8, 2016) at 55–59, ECF No. 63-2.) Dr. Fiskin then ordered a CT discogram, which was conducted on August 16, 2016, and about which Dr. Fishkin noted "demonstrates a concordant pain response at L3-4. The postoperative dye study

demonstrates a full thickness annular tear/radial disruption." (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Aug. 31, 2016) at 45–49.) Dr. Fishkin further indicated that the discogram was consistent with the findings of the August 16, 2016 MRI. (*Id.*) He informed Plaintiff that surgery was an option to address the damage at L3-4, which Plaintiff chose to undergo. (*Id.*) In addition, Dr. Fishkin found Plaintiff to be disabled from February 3, 2016 to February 2, 2018 for Workers' Compensation purposes because of his back injuries. (Volz Aff. Ex. 2, ECF No. 63-2.)

Further, on February 14, 2018—over two years after the accident—Plaintiff complained of "persistent low back pain" that he rated as "9/10 on average," describing the pain as "constant with persistent radiation, numbness and tingling down [his] bilateral lower extremities." (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Feb. 14, 2018) at 1, ECF No. 63-3). Moreover, Plaintiff testified that prior to the 2016 accident, he was able to perform certain chores around the house but that the accident prevented him from doing those same chores. (Cabarris Dep. at 227–9, ECF No. 58-6). For example, Plaintiff testified that he would stack wood, cut the grass, ride the lawnmower, shovel the snow, and do the plumbing. (*Id.* at 229:13–15) Further, Plaintiff indicated that he can no longer work outside in the gardens, take the garbage out, do laundry, cook, clean, or perform indoor household maintenance. (Pl.'s Interrog. Resp. at 2, ECF No. 58-5.) Plaintiff has not returned to work since the accident.

Although Dr. Leone addressed Plaintiff's degenerative changes at L3-4, which he claims were caused by the 2012 fusion below it, he does not in any way address

the new findings of a herniation and tear in the L3-4 region of Plaintiff's lumbar spine after the 2016 crash. Instead, Dr. Leone focuses on his assertion that Plaintiff still continued to experience pain after his 2012 fusion and that the fusion failed, due at least in part to Plaintiff's smoking. (Dr. Leone's Report at 59–60, ECF No. 58-10.) Defendants do not dispute, however, that Dr. Fishkin could causally relate 33% of Plaintiff's lumbar pain symptoms to the subject accident. (Defs.' Reply Mem. of Law at 7, ECF No. 65; *see also* Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Feb. 14, 2018) at 2,[4] ECF No. 63-3.)

Moreover, on November 29, 2017, Dr. Fishkin indicated that Plaintiff "sustained a permanent lumbar spinal injury and has a permanent partial loss of use of the lumbar spine." (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Nov. 29, 2017) at 9, ECF No. 63-2.) This assessment was made after Dr. Fishkin had been treating Plaintiff for his lumbar spine injuries for almost two years after the 2016 collision, after having conducted numerous physical examinations of Plaintiff over that time period, and after reviewing Plaintiff's imaging related to his lumbar spine.

On December 17, 2017, Dr. Fishkin sent Plaintiff for a Functional Capacity Evaluation ("FCE"), which was completed by Buffalo Ergonomics OT Services, PLLC ("Buffalo Ergonomics"). (FCE at 2, ECF No. 63-4.) The test found that Plaintiff had "[m]oderate limitation in postural activities such as elevated work at 70″, rotation in standing, forward bending in standing, low level postural activities such as the ½ and

---

[4] The letter does not contain page numbers, but the Court's CM-ECF system assigned page numbers to the exhibit, and the CM/ECF-assigned page number is 7.

tall kneel, and crawling." (*Id.* at 3.) As part of the evaluation, Buffalo Ergonomics included a grid noting each of Plaintiff's limitations in terms of how frequently he could perform the tested activities during an 8-hour day. (FCE Grid at 1–2, ECF No. 63-4.) On February 14, 2018, Dr. Fishkin completed a form titled "Doctor's Report of MMI/Permanent Impairment, EC-4.3," in which he found that Plaintiff suffered permanent impairments with respect to his lumbar spine. (¶ E, ECF No. 63-3.) Dr. Fishkin found that Plaintiff was limited to lifting/carrying to 15 pounds occasionally, 7 pounds frequently, and 5 pounds constantly. (*Id.* ¶ F.) He further indicated that Plaintiff's pushing/pulling was limited to 50 pounds occasionally, 25 pounds frequently, and 10 pounds constantly. (*Id.*) Finally, Dr. Fishkin noted that Plaintiff could never kneel or bend/stoop/squat and only occasionally climb, reach overhead, operate machinery, and be exposed to temperature extremes/high humidity. (*Id.*) In support of these findings, Dr. Fishkin cited to his notes, dated February 14, 2018, which indicated that his findings in the EC-4.3 form were reached based upon the results of the FCE, Plaintiff's history, a physical examination of Plaintiff, and a review of the medical records and prior tests conducted to determine the nature of Plaintiff's injury. (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Feb. 14, 2018) at 1, 4[5], ECF No. 63-3.)

In addition, Plaintiff was treated by a chiropractor from February 12, 2016, through June 13, 2016. (Chart Notes at 1–49, ECF No. 63-5.) A review of these records demonstrates that the chiropractor repeatedly assessed Plaintiff with muscle spasms

---

[5] The letter does not have page numbers. The CM/ECF-assigned numbers are 6 & 9.

in his back. (*Id.* at 6, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 35, 37, 38, 39, 41, 42, 43, 44.) On May 2, 2016, the chiropractor conducted Range of Motion ("ROM") testing on Plaintiff's lumbar spine with the following findings:

> Lumbar Flexion: 90 is normal today is measured 60
>
> Lumbar Extension: 20 is normal today is measured 5
>
> Lumbar Left Lateral Flexion: 20 is normal today is measured 10
>
> Lumbar Right Lateral Flexion: 20 is normal today is measured 10
>
> Lumbar Left Rotation: 10 is normal today is measured 10
>
> Lumbar Right Rotation: 10 is normal today is measured 10.

(*Id.* at 33.) The chiropractor also performed a Kemp's Test on Plaintiff, which was positive, meaning that Plaintiff's test was "indicative of a disc protrusion or prolapse . . . [a]n increase in pain was noted in the . . . lumbar . . . region that was rated as a Grade 2: Moderate pain observed and reported." (*Id.* at 34.) After the ROM testing, the chiropractor concluded that Plaintiff "remains unable to function at work and continues to struggle with his activities of daily living . . . He continues to suffer significant limitations with ROM in both his cervical and lumbar spine. He remained with radicular symptoms and moderate spinal muscle spasm." (*Id.* at 34–35.) The chiropractor also conducted a Yeoman's Test, which resulted in an assessment of "Grade 2: Moderate pain observed and reported" in connection with Plaintiff's lumbar spine. (*Id.* at 34–35.)

The ROM testing was repeated on June 13, 2016, with the following results:

> Lumbar Flexion: 90 is normal today is measured 65

> Lumbar Extension: 20 is normal today is measured 5
>
> Lumbar Left Lateral Flexion: 20 is normal today is measured 10
>
> Lumbar Right Lateral Flexion: 20 is normal today is measured 10
>
> Lumbar Left Rotation: 10 is normal today is measured 10
>
> Lumbar Right Rotation: 10 is normal today is measured 10.

(*Id*. at 45–46.) Again the chiropractor conducted the Kemp's and Yeoman's tests, which demonstrated the same results as the tests conducted on May 2, 2016. (*Id*. at 48–49.)

Plaintiff's subjective evidence regarding his limitations as a result of the accident coupled with the objective medical evidence is sufficient to raise a triable issue of fact under the "permanent consequential limitation" and "significant limitation" categories. *See Toure*, 98 N.Y.2d at 353 (finding that a plaintiff established a serious injury under the permanent/significant consequential limitation categories where plaintiff provided evidence that he suffered pain performing certain activities and plaintiff's doctor indicated that the MRI and CT-scan of the spine showed bulging discs, that plaintiff had muscle spasms, and a decreased range of motion.); *Sweeney v. United States*, No. 14-CV-402-A, 2018 WL 1428253 (W.D.N.Y. Mar. 22, 2018) (finding plaintiff raised a triable issue of fact regarding whether she sustained a serious injury under the significant/permanent consequential limitation of use categories, noting that while "disc bulges and herniations alone do not constitute a serious injury . . . Plaintiff [ ] submitted additional evidence relating to the extent or degree of her limitations."); *Harris v. Carella* 42 A.D.3d 915, 916–917 (N.Y. App. Div.

4th Dep't 2007) (plaintiff raised a triable issue of fact regarding a serious injury under the permanent/significant consequential limitation categories where she submitted evidence from her treating chiropractor who stated, in part, that plaintiff had a loss of range of motion in his lumbar spine and where the chiropractor set forth tests used to determine plaintiff's limited range of motion as compared to a normal range of motion).

Finally, "the conflicting opinions in this case raise an issue of fact regarding whether Plaintiff's injuries are permanent and/or whether they constitute significant impairment." *Sweeney v. United States*, No. 14-CV-402-A, 2018 WL 1428253, *7 (W.D.N.Y. March 22, 2018) (citing *Cook v. Peterson*, 137 A.D.3d 1594, 1596 (N.Y. App. Div. 4th Dep't 2016) ("conflicting expert opinions on the issue of serious injury create triable issues of fact requiring a trial.")).

### Causation

Once a defendant has established, *prima facie*, that the alleged injuries were not caused by the accident, a plaintiff must rebut the showing with "objective medical proof of a serious injury causally related to the accident in order to survive summary dismissal." *Mueller v. Seatainer Transp., Ltd.*, 816 F. Supp. 2d 206, 212 (W.D.N.Y. 2011) (citing *Pommells v. Perez,* 4 N.Y.3d 566 (2005)). The  "issue of causation is separate and distinct from the issue of whether [the plaintiff] suffered 'serious injury' as a matter of law" *Heisler v. MPT New York, Inc.,* No. 02-CV-0351E(SR), 2003 WL 23350126, *4 (W.D.N.Y. Dec. 22, 2003).

With respect to Plaintiff's claimed neck and back injuries, Defendants assert that even if there is objective medical evidence that Plaintiff suffered an injury, there

is lack of causation where "additional contributory factors interrupt the chain of causation" between the time of the accident and the alleged injury "such as a preexisting condition." (Defs.' Mem. of Law at 23.)

Defendants assert that Plaintiff has a history of injuries relating to the same parts of his neck and back that he alleges were injured as a result of the January 2016 collision. (*Id.*) Defendants argue that Plaintiff admits that he was involved in a motor vehicle accident in 2012, and which ultimately resulted in surgery to fuse the L4-5 and L5-S1 regions of his back. (*Id.*) Defendants also note that X-rays revealed degenerative disc disease in the L2-3 region prior to the subject crash. (*Id.*) Without a citation, Defendants assert that Donovan Holder, M.D., testified that he diagnosed Plaintiff with "failed back syndrome" in 2015, meaning that Plaintiff's 2012 bone fusion was unsuccessful. (*Id.*) Again, without providing a cite, Defendants assert that Dr. Fishkin testified that prior to the 2016 accident, he was "worried about the risk for adjacent level disease at L3-4." (*Id.*)

Additionally, Defendants' expert, Dr. Leone, concluded that he "believe[s] with reasonable medical certainty the [Plaintiff's] low back symptoms emanated from the injury of 2012." (Leone's Report at 59, ECF No. 58-10.) Dr. Leone asserts that Plaintiff continued to have lower back symptoms after his 2012 surgery up through 2015, and was taking prescription pain medication to alleviate the symptoms. (*Id.* at 59–60.) Further, Dr. Leone indicates that medical records show Plaintiff's 2012 spinal fusion at L4–5 and L5–S1 "did not succeed because of the claimant's on-going smoking." (*Id.* at 60.) Dr. Leone wrote: "The degenerative changes at L3-4 are in all likelihood a

result of the fusion below it," by putting pressure on L3-4. (*Id.*) Finally, Dr. Leone stated that he "believe(s) with reasonable medical certainty that [Plaintiff's] ongoing low back symptoms as well as the degenerative changes at L3-4 are **NOT** related to the accident of January 19, 2016 and were clearly a result of the surgery in 2012 and the symptoms that he had after that surgery." (*Id.*) (emphasis in original.)

However, "even if Plaintiff had some amount of pre-existing degenerative disc disease, that alone is not sufficient to show that there is no causal link between the collision and an exacerbation of Plaintiff's condition." *Burzynski v. United States*, No. 13-CV-766S, 2016 WL 6298513, *7 (W.D.N.Y. Oct. 25, 2016); *Croisdale v. Weed*, 139 A.D.3d 1363, 1364 (4th Dep't 2016) ("although defendants contended in support of the motion that plaintiff's left knee injuries were preexisting and the result of a degenerative condition, they failed to submit evidence establishing as a matter of law that the injuries were entirely preexisting and were not exacerbated by the accident in question.") (internal citation and punctuation omitted).

On April 6, 2016, Dr. Fishkin conducted a physical examination of Plaintiff for a repeat spinal evaluation for Plaintiff's Workers' Compensation coverage. (Zair Fishkin, M.D., Ph.D., letter to Workers' Compensation Board (Apr. 6, 2016) at 2, ECF No. 63-2 at 61.) In conducting the physical examination Dr. Fishkin found that Plaintiff had lumbar flexion of 45°/0-60° and extension of 15°/0-25°. (ECF No. 63-2 at 63.) Under the "History" portion of the medical record, Dr. Fishkin also reviewed the following:

- Lumbar CT from January 19, 2016;

- Lumbar MRI from May 30, 2012;

- Cervical MRI from May 30, 2012;

- Cervical MRI from February 17, 2016; and

- Thoracic MRI from February 17, 2016.

(ECF No. 63-2 at 62.) After conducting the physical examination and reviewing the CT and MRIs, Dr. Fishkin concluded that Plaintiff "suffered significant injuries to the spine as a result of the [2016] work related accident." (ECF No. 63-2 at 64.) Further, after reviewing the results of Plaintiff's CT discogram conducted on August 16, 2016, Dr. Fishkin stated that "[i]n [his] best medical opinion with a reasonable amount of certainty, this injury is causally related to the work-related accident." (ECF No. 63-2 at 50.) Dr. Fishkin also bolstered this finding of causation during his testimony:

> Q.    Did you even render an opinion, to a reasonable degree of medical certainty, whether or not [Plaintiff's 2016] surgery was necessitated by the accident of January 2016?
>
> A.    Yes.
>
> Q.    What was that opinion?
>
> A.    That it was related to the accident described.
>
> * * *
>
> Q.    What are you basing that on?
>
> A.    My treatment of that patient.

(Fishkin Dep. at 70–72, ECF No. 58-14.) This finding of causation is particularly significant because Dr. Fishkin was Plaintiff's treating orthopedic surgeon for his 2012 accident and subsequent surgery in 2016. Based upon the forgoing, Plaintiff has

raised an issue of fact as to whether the accident caused and/or exacerbated an injury to his lumbar spine.

For the reasons stated above, Plaintiff has demonstrated that there is a genuine issue of material fact regarding whether his spinal injury qualifies as a "serious injury" under New York's No-Fault law and whether this injury was caused by the January 19, 2016, collision. Because an issue of fact precludes summary judgment, the Court need not address the remainder of Defendants' arguments in support of summary judgment.

## CONCLUSION

For all of the above reasons, Defendants' motion for summary judgment (ECF No. 58) is DENIED.

**SO ORDERED**.

Dated: August 19, 2020
      Rochester, New York

MARK W. PEDERSEN
United States Magistrate Judge